UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CONNIE PATRICIA GARRIGAN
AFAMASAGA,

      Debtor.

_____

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

      Appellant,

  v.

CONNIE PATRICIA GARRIGAN
AFAMASAGA,

      Appellee.

2:05-CV-2348-MCE

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

Through the present action, Educational Credit Management Corporation ("Appellant") is seeking review of the United States Bankruptcy Court's November 7, 2005, Order ("Bankruptcy Order") discharging a significant portion of Connie Patricia Garrigan Afamasaga's ("Appellee") $33,000 educational debt.

1

In its Bankruptcy Order, the Judge found that Appellee was entitled to a partial discharge of her student debt pursuant to the undue hardship exception set forth in 11 U.S.C. section 727. For the reasons set forth below, the Court finds the foregoing conclusion to be in error and, accordingly, reverses.

## BACKGROUND

Appellee filed a bankruptcy petition seeking discharge of debts totaling $104,000. In addition to her other secured and unsecured debts, Appellee sought discharge of $33,000 in educational loans. Appellee is a 43 year old woman with sole physical and legal custody of her three children ages 9, 12 and 16. Neither she nor her children suffer from any physical or psychological disability and all three children are full time students. Appellee is currently unemployed and remains so by choice. Her income is limited to monthly payments of $1348 and $520 in child support and spousal support, respectively.

Appellee attended the Court Reporting Institute of Dallas and the Arlington Court Reporting College from 1987 to 1990. In addition, she completed a Ward Secretary Program in 1982. While attending these programs, she amassed educational debts totaling $16,731. Appellee's loans went into repayment on or about September 22, 1990. She obtained both deferments and forbearance of payment for periods totaling 101 months. Her payments to date total $13,626.49 and her remaining balance is slightly in excess of $33,000.

///

1   Appellee lives in low income housing making her rent $502
2 per month.  She drives a 2003 Chevrolet Malibu on which she makes
3 a monthly car payment of $117.  In addition, her monthly expenses
4 include $51 for local and cellular telephones, $14 for cable
5 television and internet service, $65 for dining out, $75 for
6 clothing, $50 for recreation expenses, $25 for allowances and $50
7 for charitable contributions.
8   Appellee sought employment with the Elk Grove Unified School
9 District and the United States Post Office ("USPS").  Shortly
10 after completing her application with the USPS, Appellee received
11 a letter indicating a job opening.  She rejected that offer of
12 employment and has since elected to cease her employment search.
13   With respect to repayment options, Appellee is entitled to
14 consolidate her loans with programs such as the William D. Ford
15 Direct Loan Consolidation Program.  In addition, Appellee can
16 seek enrollment in the income contingent repayment plan ("ICRP").
17 The ICRP plan adjusts the loan payment in accord with the
18 debtor's income.  Once a debtor has participated in the ICRP for
19 a period of twenty five years, any outstanding balance may be
20 forgiven.  Pursuant to this repayment program, Appellee's loan
21 payment at her current income level would be zero. When asked
22 about this repayment option during the trial in bankruptcy court,
23 Appellee explained "[m]y first thought – it was a 25 year plan.
24 My first thought was 25?  That's 40 years with this thing hanging
25 over my head.  It's just hanging over my head and I feel like
26 there's nothing I can do to minimize the debt amount.  So my
27 instant reaction was, no, I don't want to do that."  Accordingly,
28 Appellee has chosen not to seek alternative repayment options.

3

**STANDARD**

In reviewing appeals from bankruptcy court decisions, district courts must apply a clearly erroneous standard to the findings of fact and review de novo the Bankruptcy Court's conclusions of law.  *In re Lazar*, 83 F.3d 306, 309 (9th Cir. 1996).  The Bankruptcy Court's decision with respect to any equitable defenses is reviewed for abuse of discretion.  *A.C. Aukerman Co. v. R.I. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).

**ANALYSIS**

An individual debtor petitioning for bankruptcy does so to obtain a discharge of debts owed at the time of the filing.  For a bankruptcy brought under Chapter 7, the discharge is granted pursuant to 11 U.S.C. Section 727.  This discharge voids any judgment against the debtor to the extent that it is a determination of the personal liability of the debtor with respect to the debt, and bars any effort on the part of creditors to collect the debt.  11 U.S.C. § 524(a).  A discharge pursuant to that part encompasses virtually all pre-petition debts.

One exception to the general discharge of pre-petition debts is debt incurred as the result of educational loans.  11 U.S.C. § 523(a).  A debtor seeking to discharge all or part of his educational loans must prove that "excepting such debt from discharge ... will impose an undue hardship on the debtor and the

4

1 debtor's dependents."  11 U.S.C. § 523(a)(8).

2   Since its initial enactment, Section 523(a)(8) has undergone
3 several amendments.  Those amendments have made discharging
4 educational debt progressively more difficult.  *Hemar Ins. Corp.*
5 *v. Cox (In re Cox)*, 338 F.3d 1238, 1243 (11th Cir. 2003)
6 ("considering the evolution of § 523(a)(8), it is clear that
7 Congress intended to make it difficult for debtors to obtain a
8 discharge of their student loan indebtedness.")

9   In *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155
10 F.3d 1108, 1109 (9th Cir. 1998), the Ninth Circuit adopted the
11 three part test for undue hardship first articulated by the
12 Second Circuit Court of Appeals in *In re Brunner*, 831 F.2d 395,
13 396 (1987).  Under the *Brunner* test, the debtor must establish
14 that 1) he cannot maintain, based on current income and expenses,
15 a "minimal" standard of living for himself and his dependents if
16 forced to repay the loans; 2) additional circumstances exist
17 indicating that this state of affairs is likely to persist for a
18 significant portion of the repayment period; and 3) he has made
19 good faith efforts to repay the loans.  *Pena*, 155 F.3d at 1111;
20 *Brunner*, 831 F.2d at 396.

21   Appellee has the burden of proof as to all three elements.
22 *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999) (citing
23 *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72
24 F.3d 298, 306 (3d Cir. 1995)).  Accordingly, if any one of the
25 requirements is not met, the bankruptcy court's inquiry must end
26 and no part of the loan can be discharged.  *Id.*
27 ///
28 ///

**1.   Standard of Living**

As noted above, the first prong of the *Brunner* test requires the debtor to prove that she "cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396. To meet this requirement, the debtor must demonstrate more than simply tight finances. *Rifino v. U.S. (In re Rifino)*, 245 F.3d 1083, 1088 (9th Cir. 2001) (citations omitted). "In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness." *Id*.

In this case, the bankruptcy court found that Appellee's case was "just different." The bankruptcy court did not elaborate what about this particular case was different, but merely concluded as such. Appellant contends that the bankruptcy court's finding is clearly erroneous because Appellee's budget contains unnecessary items such as dining out, donations, allowance, recreation, and internet service. Accordingly, Appellants contend, Appellee's budget does not constitute a minimal standard of living rendering the bankruptcy court's conclusion clearly erroneous.

Appellee argues that if she elected to join the workforce, her expenses would spiral upward such that even her current meager living would be compromised.

///
///
///

6

In support of this position, she explains that her low income benefits would be lost were she to commence earning a wage. While the Court has no reason to doubt her assertion, it is unpersuaded that obtaining employment would double her expenses. Specifically, Appellee argues that, were she to become employed, she would need to expand her current cable subscription to entertain her children during the evenings when she would be required to run her errands. She further argues that she would be required to dine out more often because she would be too rushed to make meals at home. In addition, she explains that she would need to increase her monthly donations as well as the allowance she gives the children. While one might desire a more comprehensive cable subscription and more meals out, these amenities are clearly beyond a "minimum" standard of living.

Nonetheless, while a number of courts have declined to discharge student loan obligations in circumstances similar to the case at bar and this Court would have declined to discharge Appellee on the facts of this case, the bankruptcy court's refusal to do so here is not clearly erroneous. *See Anderson*, 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.")

///
///
///
///
///
///

**2.   Additional Circumstances**

The "additional circumstances" prong of the *Brunner* test "is intended to effect 'the clear congressional intent exhibited in § 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt.'" *Rifino*, 245 F.3d at 1088-89 (citations omitted).  There must be evidence that the debtor's "road to recovery is obstructed by the type of barrier that would lead [the court] to believe he will lack the ability to repay for several years." *In re Roberson*, 999 F.2d 1132, 1137 (7th Cir. 1993) (citations omitted).  Examples of such barriers may include psychiatric problems, lack of usable job skills and severely limited education. *Id.* (citations omitted); *compare In re Brightful*, 267 F.3d 324, 330 (3rd Cir. 2001) (bankruptcy court found that second prong of Brunner test was met because debtor most likely would never attain her college degree, lacked vocational training, suffered psychiatric problems and was emotionally unstable.  The Third Circuit reversed finding that the debtor was nonetheless "intelligent, physically healthy, currently employed, possessed useful skills ... and had no extraordinary, non-discretionary expenses").

In this case, the bankruptcy court stated "under the second Brunner test ... I think in this next year or so, it's obviously not going to be paid and it's going to be several years before I'm convinced that she can make payments and reduce that amount."  Tr. Trans. 54:12-19.  The Court finds the foregoing conclusion to be clearly erroneous.

///

### a.   **No Insurmountable Barriers**.

The record is devoid of evidence demonstrating any mental, physical, or other barriers that are either insurmountable or that impair Appellee's ability to work.  In fact, Appellee demonstrated quite the opposite in her conduct during these proceedings.  Appelle's brief in this matter was extremely articulate as was her oral argument.  The bankruptcy court found, and this Court agrees, that Appellee is quite "bright."  Appellee argues that being labeled bright "although flattering, is not a marketable skill in the job market."  App'ee Opp. p. 21.  The Court disagrees.  Appellee is intelligent, physically healthy and possesses highly marketable skills making her highly employable.  Therefore, the Court finds Appellee has failed to demonstrate any insurmountable barrier in her ability to repay her educational loans.

### b.   **Persistence of Current State of Affairs**.

Although the bankruptcy court essentially found that Appellee was unable to obtain sufficiently high paying work to make any meaningful payments on the principle of her educational loans, the Court finds the record supports the converse.  Appellee repeatedly points to the implications employment would have on her children as her basis for declining employment.  She asserts that the balance of obtaining employment versus remaining unemployed tips sharply in favor of unemployment when noting the increase in child related expenses attendant with employment.

1    Even assuming the cogency of Appellee's argument, the Court
2 finds that this condition certainly will not persist for a
3 significant portion of the repayment period.  In fact, precisely
4 the opposite is true.  As her children progress toward maturity,
5 her expenses in regard to their care will necessarily diminish.
6 The cost of their food, clothing, dining, recreation and
7 allowances will all but cease as they reach the age of majority.
8 In addition, certain other costs such as the $400 per month for
9 child care will cease years before that point.  Appellee argues
10 that even as her eldest child reaches the age of majority she
11 will nonetheless continue to bear a financial burden because her
12 child will be in pursuit of a college degree.  Tr. Trans. 33:16-
13 34:3.  The Court recognizes the value of higher education.
14 However, the Court cannot and will not shift Appellee's loan
15 burden to tax payers in order to finance the potential
16 educational costs of her child.
17    This prong of the *Brunner* test necessarily looks to the
18 future and the Court must consider the likelihood that the
19 debtor's financial situation will improve sufficiently to permit
20 her to resume paying her educational loans.  Without reservation,
21 the Court finds there are simply no "additional circumstances"
22 that would impair Appellee's ability in this regard.  Therefore,
23 the Court finds that the bankruptcy court erred as a matter of
24 law in holding that Appellee's circumstances rise to the level of
25 "additional circumstances" necessary to satisfy the second prong
26 of the *Brunner* test.
27 ///
28 ///

1  Generally, if one of the elements of the three part "undue
2 hardship" test is not proven, the inquiry must end and the
3 student loan cannot be discharged.  Accordingly, the Court need
4 not proceed to whether Appellee has shown good faith.  Her
5 educational loans cannot be discharged as she has failed to meet
6 her burden of showing an undue hardship.

**CONCLUSION**

10  For the reasons stated above, the bankruptcy court's Order
11 discharging $23,000 of Appellee's educational loans is reversed.

13 IT IS SO ORDERED.
14 DATED: June 12, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE